IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **24-14236-JJ**

United States of America,

Appellee,

- versus -

Justin Sigmon,

Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

# BRIEF FOR THE UNITED STATES


Jason A. Reding Quiñones
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9295

Emily M. Smachetti
Acting Chief, Appellate Division

Alan Chen
Attorney, U.S. Department of Justice

**United States v. Justin Sigmon, Case No. 24-14236-JJ**
**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list below is a complete list of the persons and entities previously included in the government's CIP, as well as additional persons and entities (designated in bold face) who have an interest in the outcome of this case.

Astigarraga, Lauren Alexandra

Bharathi, Sowmya

Budhrani, Anshu

Calderon, Marx

Chen, Alan

Davis, Michael S.

Dopico, Hector A.

Fernandez, Bertila

Flores, Hector L.

Goodman, Hon. Jonathan

Graham, Hon. Donald L.

Jayanth, Srilekah

Lapointe, Markenzy

Louis, Hon. Lauren Fleischer

Matzkin, Daniel

Monk, Lacee Elizabeth

O'Byrne, Hayden P.

Obenauf, Jessica Kahn

Reding Quiñones, Jason A.

Reid, Hon. Lisette M.

Sigmon, Justin Dale

Silverstein, Joan

**Smachetti, Emily M.**

Stanley, William

United States of America

Williams, Hon. Kathleen M.

Counsel certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

*/s/ Alan Chen*
Alan Chen
Attorney, U.S. Department of Justice
950 Pennsylvania Avenue NW
Room 5138
Washington, D.C. 20530
(202) 353-0565

## Statement Regarding Oral Argument

The United States does not oppose the defendant-appellant's request for oral argument in this case.

## Table of Contents

**Page:**


Certificate of Interested Persons ........ c-1

Statement Regarding Oral Argument ........ i

Table of Contents ........ ii

Table of Citations ........ iv

Statement of Jurisdiction ........ viii

Introduction ........ 1

Statement of the Issues ........ 2

Statement of the Case ........ 3

I. Course of Proceedings and Disposition in the Court Below ........ 3

II. Statement of the Facts ........ 3

III. Rulings Under Review and Standards of Review ........ 8

Summary of the Argument ........ 8

Argument ........ 9

I. The evidence at trial was sufficient to convict Sigmon of abusive sexual contact with a minor under the age of 12 in violation of 18 U.S.C. § 2244(a)(5). ........ 9

A. Background ........ 10

B. Standard of Review ........ 11

**Table of Contents (continued)**

**Page:**


C. Discussion ........................................................................12

II. The district court did not abuse its discretion by denying Sigmon's motion for a new trial based on the jury's receipt of a copy of the indictment that included unredacted forfeiture allegations. ..................................................19

A. Background ........................................................................19

B. Standard of Review ........................................................................23

C. Discussion ........................................................................26

1. The unredacted forfeiture allegations do not trigger a presumption of prejudice. ........................................................26

2. Even if presumptively prejudicial, the jury's exposure to the indictment's unredacted forfeiture allegations was harmless...31

Conclusion ........................................................................................40

Certificate of Compliance ........................................................................41

Certificate of Service ........................................................................411

## Table of Citations


**Cases:** **Page:**

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ....24

*Boyd v. Allen*, 592 F.3d 1274 (11th Cir. 2010) ....25

*Hill v. Kemp*, 833 F.2d 927 (11th Cir. 1987) ....13

* *Remmer v. United States*, 347 U.S. 227 (1954) .... 9, 25, 26, 27

*Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922 (11th Cir. 2007) ....26

*Smith v. Phillips*, 455 U.S. 209 (1982) ....28

*United States v. Abbell*, 271 F.3d 1286 (11th Cir. 2001) ....39

*United States v. Anderson*, 329 F. App'x 878 (11th Cir. 2009) .... 33, 38

* *United States v. Benjamin*, 958 F.3d 1124 (11th Cir. 2020) .... 25, 28, 31

* *United States v. Brown*, 53 F.3d 312 (11th Cir. 1995) ....16

*United States v. Brown*, 934 F.3d 1278 (11th Cir. 2019) ....24

*United States v. De La Vega*, 913 F.2d 861 (11th Cir. 1990) ....25

*United States v. Demarest*, 570 F.3d 1232 (11th Cir. 2009) ....11

* *United States v. Dortch*, 696 F.3d 1104 (11th Cir. 2012) .... 27, 32, 38

*United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988) ....30

*United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980) ....27

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (en banc) ....26

*United States v. Goldesberry*, 128 F.4th 1183 (10th Cir. 2025) .... 17, 18

**Table of Citations (continued)**


**<u>Cases:</u>** **<u>Page:</u>**

*United States v. Hardy*, 895 F.2d 1331 (11th Cir. 1990)........................................17

*United States v. Harris*, 989 F.3d 908 (11th Cir. 2021) .........................................26

*United States v. Howard*, 506 F.2d 865 (5th Cir. 1975)..........................................39

*United States v. Jones*, 32 F.3d 1512 (11th Cir. 1994)............................................12

*United States v. Kennedy*, 146 F.4th 1054 (11th Cir. 2025)...................................13

*United States v. Khanani*, 502 F.3d 1281 (11th Cir. 2007) .....................................26

*United States v. Kirkwood*, 412 F. App'x 259 (11th Cir. 2011).............................38

*United States v. Lee*, 232 F.3d 653 (8th Cir. 2000) ................................................15

*United States v. Lopez*, 590 F.3d 1238 (11th Cir. 2009) .........................................37

*United States v. Louis*, 146 F.4th 1328 (11th Cir. 2025).........................................16

*United States v. Louis*, 861 F.3d 1330 (11th Cir. 2017) ..........................................11

*United States v. Martinez*, 14 F.3d 543 (11th Cir. 1994)..........................................27

*United States v. Norman T.*, 129 F.3d 1099 (10th Cir. 1997)..................................14

*United States v. Perkins*, 748 F.2d 1519 (11th Cir. 1984)........................................39

*United States v. Ronda*, 455 F.3d 1273 (11th Cir. 2006)...................... 24, 25, 27, 34

*United States v. Rowe*, 906 F.2d 654 (1990) ..........................................................25

*United States v. Scheffer*, 523 U.S. 303 (1998) ......................................................19

* *United States v. Siegelman*, 640 F.3d 1159 (11th Cir. 2011) ........... 24, 25, 27, 32

**Table of Citations (continued)**


**Cases:** **Page:**

*United States v. Spurlock*, 811 F.2d 1461 (11th Cir. 1987)....................................27

*United States v. Thomas*, 8 F.3d 1552 (11th Cir. 1993) .........................................12

*United States v. Tucker*, 526 F.2d 279 (5th Cir. 1976)...........................................29

* *United States v. Venske*, 296 F.3d 1284 (11th Cir. 2002)........................ 28, 29, 31

*United States v. Vigil-Montanel*, 753 F.2d 996 (11th Cir. 1985) ............................13

*United States v. Warner*, 638 F. App'x 961 (11th Cir. 2016) .................................29

* *United States v. Whatley*, 719 F.3d 1206 (11th Cir. 2013)................ 27, 31, 33, 38

* *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004)........................16

*United States v. Winkle*, 587 F.2d 705 (5th Cir. 1979)...........................................24

**Statutes:** **Page:**

18 U.S.C. § 2241 ..........................................................................................12

18 U.S.C. § 2244 ........................................................................ 1, 2, 3, 8, 9, 12, 20

18 U.S.C. § 2246 ..........................................................................................1, 13

18 U.S.C. § 3231 .......................................................................................... vi

21 U.S.C. § 853 ............................................................................................36

28 U.S.C. § 1291 .......................................................................................... vi

Fed. R. App. P. 4 .......................................................................................... vi

Fed. R. Crim. P. 32.2.....................................................................................30

**Table of Citations (continued)**

**<u>Statutes:</u>** **<u>Page:</u>**

Fed. R. Crim. P. 7 ........................................................................................30

Fed. R. Evid. 606 .........................................................................................39

**<u>Treatises:</u>** **<u>Page</u>:**

2A Charles Alan Wright & Athur R. Miller,

*Federal Practice & Procedure* § 463 (4th ed. Sept. 2025) ...........................12

**Statement of Jurisdiction**

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in a criminal case. The district court entered judgment against Defendant-Appellant Justin Sigmon on December 19, 2024. (DE134).[1] The district court had jurisdiction to enter the judgment pursuant to 18 U.S.C. § 3231. Sigmon filed a timely notice of appeal on December 27, 2024. (DE139); *see* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

[1] "DE" refers to the district court docket entry and is followed by the page number for that document. "GX" refers to a government trial exhibit. "Br." refers to Sigmon's opening brief. Consistent with 11th Cir. R. 28-5, citations to transcripts are to the page numbers that appear in the header generated by the district court's electronic filing system.

## Introduction

While awaiting dinner aboard a Carnival cruise to the Bahamas, defendant Justin Sigmon reached his hand up his nine-year-old daughter's dress and groped her upper and inner thighs for several minutes. Sigmon persisted doing so, even after his daughter repeatedly pushed his hand away and tried crossing her legs. Sigmon's conduct drew the attention of two other restaurant patrons, one of whom recorded much of the incident with her cell phone. After the patrons alerted cruise security to the episode, Carnival security personnel determined that the ship's surveillance cameras had documented the entire event. Sigmon was later charged with one count of abusive sexual contact with a minor under the age of 12, in violation of 18 U.S.C. § 2244(a)(5) .

At trial, Sigmon did not contest that he intentionally touched his daughter's inner thighs. His sole theory of defense was that he lacked the requisite intent to be convicted of abusive sexual contact—that is, he did not possess "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *See* 18 U.S.C. § 2246(3). After presentation of all of the evidence of Sigmon's guilt, including the multiple video recordings, as well as listening to Sigmon testify in his own defense, the jury found Sigmon guilty.

Sigmon now asks this Court to vacate the jury's considered verdict, primarily arguing that there was insufficient evidence that he intended to abuse, humiliate,

harass, or degrade his daughter. That contention—which essentially just repeats his defense at trial—lacks merit. The jury, after considering all of the evidence, declined to credit his testimony that he touched his daughter's inner thighs without criminal intent. That was a judgment well within the province of a rational jury to make.

Sigmon separately requests a new trial, on the ground that the jury received a version of the indictment that included boilerplate forfeiture language. The district court, which had a firsthand view of the entire trial, thoroughly considered whether there was any potential of prejudice to Sigmon, and ultimately determined that the inadvertent inclusion of that generic language in the jury's copy of the indictment was harmless beyond a reasonable doubt. There is no sound basis for this Court to disturb that determination on appeal.

## Statement of the Issues

I. Whether the evidence at trial was sufficient for a rational jury to find Sigmon guilty of abusive sexual contact with his nine-year-old daughter in violation of 18 U.S.C. § 2244(a)(5).

II. Whether the district court abused its discretion when denying Sigmon's motion for a new trial based on the jury's receipt of a copy of the indictment that contained unredacted forfeiture allegations.

## Statement of the Case

### I. Course of Proceedings and Disposition in the Court Below

In November 2023, after a five-day trial, a federal jury sitting in the Southern District of Florida convicted Sigmon on one count of abusive sexual contact with a minor under the age of 12 in violation of 18 U.S.C. § 2244(a)(5). (DE68). Following the verdict, Sigmon moved for a judgment of acquittal. (DE105:4-8). Sigmon, as well as an amicus appointed by the district court, also moved in the alternative for a new trial on the theory that the copy of the indictment sent to the jury to aid their deliberations mistakenly included unredacted forfeiture allegations. (DE104); (DE105:2-4). After hearing oral argument and holding an evidentiary hearing on the motion for a new trial, the district court denied both motions in a 34-page written order. (DE115); (DE123); (DE124). The court sentenced Sigmon to 24 months of imprisonment, to be followed by 10 years of supervised release. (DE134).

### II. Statement of the Facts

#### A. Offense Conduct

1. On May 26, 2023, Sigmon, his wife, and his sixteen- and nine-year-old daughters were on the second night of a four-day Carinval cruise to the Bahamas, leaving from Miami. (DE100:94-95); (DE101:43, 48-49). That evening, Sigmon

and his family were seated for dinner at a table in the ship's dining room. (DE100:72-73).

While waiting for their meals, Sigmon's nine-year-old daughter (B.S.), wearing a knee-length dress, climbed into Sigmon's lap. (GX2A 23:15-23:30). After a few minutes of B.S. sitting with her legs uncrossed, Sigmon reached his right hand up B.S.'s dress to rub her upper and inner thigh. (GX2A 27:05). B.S. pushed his hand away and fixed her dress. (GX2A 27:20). Less than a minute later, Sigmon again reached his hand up B.S.'s dress. (GX2A 28:15). B.S. again pushed his hand away. (GX2A 28:20).

After a minute or two of this pattern, B.S. crossed her legs. (GX2A 28:35). Sigmon persisted, continuing to touch B.S.'s upper thighs, including by wedging his hand between her now closed legs. (GX2A 28:45-31:55); *see* (GX1A); (GX1B). At one point, B.S. turned to look at Sigmon. (GX2A 30:55). In total, B.S. pushed Sigmon's hand away from her at least five times. (DE124:5). After about eight-and-a-half minutes of B.S. sitting on Sigmon's lap, Sigmon patted the empty seat beside him. (GX2A 31:55). B.S. then climbed down and sat in her own chair. (GX2A 31:55).

The incident unfolded just a few feet away from Venus Burgess and Veronica Hill, two fellow passengers on the cruise. (DE100:70-77, 85-91). Burgess, disturbed by what she was seeing, covertly recorded two cell phone videos of

Sigmon's conduct. (DE100:74-77); *see* (GX1A); (GX1B). After dinner, the two women requested that restaurant personnel call security. (DE100:78-79, 91). That evening, the ship's chief security officer, Rajesh Nalawabe, pulled and reviewed the footage from the ship's surveillance cameras that cover the dining room, which turned out to have captured the incident in its entirety. (DE100:93, 96, 100); *see* (GX2A).

Based on the complaint and the videos, Nalawabe approached Sigmon and his family as they were leaving the ship's theater after an entertainment production. (DE100:96-97). Pulling Sigmon and his wife to the side, Nalawabe explained the nature of the complaint. (DE100:97-98). Sigmon responded by "flashing his ID saying that he is a police officer." (DE100:98, 111, 114). Nalawabe decided to disengage and sent the video evidence to Carnival's law-enforcement liaison in Miami. (DE100:98-99, 111, 115-16).

2. When the ship docked back in Miami at the end of the cruise, Customs and Border Protection (CBP) Officer Alberto Silva boarded the ship and escorted Sigmon to the CBP's secondary inspection area. (DE100:117-18). There, Sigmon waived his *Miranda* rights and agreed to be interviewed by FBI Agent Daniel Lemaitre.[2] (DE101:7-8).

---

[2] The interview was not recorded because the interview was conducted at a CPB inspection facility that was not outfitted for recording, and FBI policy prohibits agents from recording interviews on their phones. (DE101:8, 18-19, 31).

Before being shown any videos of the dining room incident, Sigmon asserted that B.S. was "very active" and that his contact with his daughter was no different than "any other father touching his daughter" in service of "fatherly love." (DE101:10). After being shown video of his conduct, however, "his tone changed a little bit" and "[h]e became more defensive." (DE101:11). Sigmon "admitted that it was inappropriate," and "said he wouldn't do it again, that it didn't look right to others," but maintained "that it wasn't sexual." (DE101:11-12). Sigmon also admitted that, "if a stranger touched [his] daughter that way, [he] would punch them in the face." (DE101:77-78). After Agent Lemaitre told Sigmon that the video showed him covering his genitals after B.S. got up from his lap, Sigmon became "angry" and "emphatic[ally]" asserted that there was "zero percent chance that [he] was aroused." (DE101:12-13).

Sigmon agreed to let the officers search his cell phone, explaining that he "delete[d] some media over the cruise because the iCloud storage is full" but that he "ha[d] nothing to hide." (DE101:13). Officer Silva reviewed the roughly 10,000 photos on Sigmon's cell phone, the majority of which were of Sigmon's daughters—especially B.S. (DE100:120-21). Agent Lemaitre likewise found that B.S. "was basically number one on this phone" and that there were "an overwhelming amount of photos of [B.S.] or photos taken by [B.S.] herself." (DE101:14). The officers did not find any child pornography on the phone. (DE100:123); (DE101:14).

### B. Trial Proceedings

Sigmon was charged with one count of abusive sexual contact with a minor under the age of 12. At trial, through witness testimony and exhibits—including the ship's surveillance video and the two bystander videos—the government established the above-described facts to the jury.

The government's evidence also included expert testimony from Dr. Jamie Dickson, a licensed psychologist specializing in the area of child sexual abuse. *See* (DE100:42-53). Dr. Dickson explained that children may respond to sexual abuse in a variety of ways, not all of which include outward calls for help or obvious emotional or behavioral change. (DE100:60). She testified that "the closer the relationship to the offender, the less likely the child is to disclose [sexual abuse]," (DE100:62), and that it is specifically "not an uncommon thing" for children to fail to disclose abuse by a parent, because they believe the abuse "is normal," (DE100:65).

Taking the stand in his defense, Sigmon admitted that the videos "d[idn't] look good," and that "this is inappropriate." (DE101:72-74); *see also* (DE101:89, 144). He recognized that "obviously [B.S.] moved my hand away," (DE101:87); *see also* (DE102:52-54), and that "[l]ooking at this, now seeing after the fact of her pushing my hand away, I can tell that, you know, she was not comfortable." (DE101:157). But he claimed that he "did not touch [B.S.] with the intent to abuse,

humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." (DE103:36); *see* (DE101:73-74, 90-91, 93, 105); (DE102:68).

The jury found Sigmon guilty. (DE68).

### III. Rulings Under Review and Standards of Review

The rulings under review and the applicable standards of review are set forth in the relevant argument sections below.

## Summary of the Argument

I. The evidence at trial was sufficient for a rational jury to find Sigmon guilty of abusive sexual contact with his nine-year-old daughter, B.S, in violation of 18 U.S.C. § 2244(a)(5). Videos taken from multiple angles captured several minutes of Sigmon—in public—repeatedly sticking his hand up his daughter's dress to grope her upper and inner thighs, despite her consistent attempts to stop him. The jury permissibly inferred from that conduct that Sigmon had the intent to abuse, humiliate, harass, or degrade. That alone is enough to affirm. And Sigmon himself provided further basis for finding intent when he took the stand to deny it, because the jury was entitled to disbelieve his statements and consider his lack of credibility on that issue as substantive evidence of his guilt. Sigmon thus cannot satisfy his high burden on a sufficiency-of-the-evidence challenge.

II. The district court did not abuse its discretion by denying Sigmon a new trial based on the jury's exposure to unredacted forfeiture allegations in the

indictment. Generic forfeiture language is not an external contact with the jury likely to improperly sway consideration of the case of the kind triggering the presumption of prejudice established by *Remmer v. United States*, 347 U.S. 227 (1954). And even if prejudice is presumed, the district court did not abuse its discretion in finding the exposure ultimately harmless.

As the district court explained, the forfeiture language was entirely innocuous. A juror that viewed it most likely would have understood its reference to visual depictions as referring to the video and photo evidence admitted at trial—not, as Sigmon would suggest, child pornography. In addition, the jury had repeatedly been instructed that the indictment was not evidence and that its verdict must be based only on the evidence presented at trial. The inclusion of the unredacted forfeiture allegation was also accidental, not purposeful. And the case for Sigmon's guilt was strong. Accordingly, the district court did not abuse its discretion in finding that Sigmon suffered no prejudice. This Court should affirm.

## Argument

### I. The evidence at trial was sufficient to convict Sigmon of abusive sexual contact with a minor under the age of 12 in violation of 18 U.S.C. § 2244(a)(5).

Sigmon contends (Br. 19-28) the district court erred by denying his motion for a judgment of acquittal, asserting that the evidence was insufficient to establish the mens rea element of abusive sexual contact with a minor under the age of 12.

That contention lacks merit. The jury reasonably inferred from the video evidence of Sigmon's groping, as well as from his disbelieved denials on the stand, that he intended to abuse, humiliate, harass, or degrade B.S. by making sexual contact with her in public.

**A. Background**

After the government presented its case-in-chief, Sigmon moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, contending that the government's only evidence was the videos of the offense conduct, and that they failed to establish unlawful touching or arousal by Sigmon. (DE101:33-34). The court denied the motion, reasoning that the Sigmon had not met the "difficult standard" of Rule 29 and that the case should go to the jury to decide. (DE101:36-37). At the close of all evidence, Sigmon renewed his motion, and the court again denied it. (DE102:183).

Following the guilty verdict, Sigmon again renewed his motion for a judgment of acquittal under Rule 29. (DE105). Sigmon argued only that the government had failed to prove that he had the requisite intent to commit the offense, pointing principally to the testimony of his character witnesses. (DE105:6-8). Sigmon asserted that the jury, despite being shown video of the incident, could only speculate about his intent. (DE105:8).

The district court again denied the motion. (DE124:22-29). The court recounted "the video evidence and Sigmon's testimony" that showed that Sigmon had repeatedly groped B.S. up her dress on her inner thighs, touching her in ways that were "obviously" unwelcome. (DE124:25-27). The court observed that "Sigmon himself acknowledged that Minor B.S. pushing away of his hand was 'obvious' on the video, yet he continued with the unwanted and obviously unwelcomed touching." (DE124:29). And the court explained that, at a minimum, a rational jury could have found beyond a reasonable doubt that Sigmon intended to "harass" B.S., thereby satisfying one of the qualifying specific intent elements for the offense of abusive sexual contact. (DE124:29).

### B. Standard of Review

This Court reviews a district court's denial of a motion for acquittal *de novo*. *United States v. Louis*, 861 F.3d 1330, 1333 (11th Cir. 2017). When reviewing the sufficiency of the evidence, this Court "view[s] the evidence in the light most favorable to the government and draw[s] all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Demarest*, 570 F.3d 1232, 1239 (11th Cir. 2009) (citation omitted). "The relevant question . . . is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ibid.* (citation omitted).[3]

**C. Discussion**

1. As relevant here, the elements of abusive sexual contact with a minor under the age of 12 are that the defendant, (1) while in the special maritime and territorial jurisdiction of the United States, (2) knowingly (3) engages, or attempts to engage, in "sexual contact" with a minor below the age of 12 years. 18 U.S.C. §§ 2241(c), 2244(a)(5). "Sexual contact," in turn, is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast,

[3] Sigmon asserts in passing that the district court "applied the incorrect standard" to Sigmon's motion for a judgment of acquittal at the close of the government's case. Br. 6, 19 n.1. The district court did not err. It correctly stated that, on Sigmon's Rule 29 motion, the court was "require[d] . . . to look at the evidence in the light most favorable to the government" and draw "all the inferences therefrom in favor of the government." (DE101:36-37). The court's statement that this is "not the standard for the jury," (DE101:36), was accurate, as the jury is, of course, entitled to weigh the evidence itself and draw its own inferences, whether in favor of the government or otherwise.

In any event, Sigmon's "decision to present his case after denial of a motion for judgment of acquittal operates as a waiver of his objection to the denial of his motion for acquittal." *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994). On appeal, Sigmon may only challenge the district court's denial of his renewed motion, and this Court may consider all of the evidence presented, including the defense's case. *See* 2A Charles Alan Wright & Athur R. Miller, *Federal Practice & Procedure* § 463 (4th ed. Sept. 2025); *United States v. Thomas*, 8 F.3d 1552, 1558 n.12 (11th Cir. 1993). Sigmon does not claim that the court applied the incorrect legal standard in its denial of his post-verdict acquittal motion.

inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* § 2246(3).

Here, it is undisputed that Sigmon intentionally reached up the dress of the victim, B.S., and repeatedly touched her on her upper and inner thighs (at the very least); that B.S. was nine years old at the time of the touching; and that the touching occurred on a Carnival cruise ship within the special maritime and territorial jurisdiction of the United States. The only element Sigmon disputes is whether he had the intent to abuse, humiliate, harass, or degrade B.S., or to arouse or gratify his own sexual desire.

2. The jury reasonably found based on the evidence presented that Sigmon had the requisite intent. For purposes of reviewing sufficiency, the law draws "no distinction between circumstantial and direct evidence." *United States v. Kennedy*, 146 F.4th 1054, 1064 (11th Cir. 2025) (citation omitted). Indeed, it is black-letter law that a defendant's intent need not be proved directly, but instead "can be inferred from his conduct and all the surrounding circumstances." *United States v. Vigil-Montanel*, 753 F.2d 996, 999 (11th Cir. 1985); *see also Hill v. Kemp*, 833 F.2d 927, 930 (11th Cir. 1987) (approving a jury instruction stating that "[i]ntent is always a question for the jury and is ordinarily ascertained by act and conduct" and "may be presumed when it is the natural and necessary consequence[] of the act") (emphasis omitted). Just as intent to rob can be inferred from pointing a gun at a store clerk

and accepting the money from the register, the intent to "abuse, humiliate, harass, or degrade," or "arouse or gratify" can likewise be inferred from a person's actions and "the circumstances surrounding the incident." *United States v. Norman T.*, 129 F.3d 1099, 1104 (10th Cir. 1997).

The video evidence presented at trial here—which was captured both by a bystander's cell phone and by surveillance cameras—is plain and straightforward. As summarized by the district court, while B.S. is seated on Sigmon's lap, he reaches up her dress to touch her "upper and inner thigh underneath her dress, moving his hand towards her vaginal area"; in response, B.S. "pushes Sigmon's hand away five times." (DE124:4-5). Undeterred, Sigmon "continued touching [B.S.'s] inner thigh." (DE124:5). Eventually, "B.S., who initially was seated with her legs uncrossed, crosses her legs." (DE124:5). Sigmon continues to touch her inner thigh and reach his hand up her now closed legs, appearing as if "tr[ying] to wedge his finger between [B.S.'s] crossed legs." (DE124:5, 27). As the touching continues, B.S. turns to look at Sigmon. (DE124:26). She also "moves her hands to her side in what again appears to be an attempt to stop Sigmon from touching her." (DE124:27).

The jury was entitled to observe Sigmon's conduct on the videos, B.S.'s reaction, and come to the common-sense conclusion that when Sigmon continued reaching his hand up B.S.'s dress—in public—despite her repeated attempts to

rebuff him, he intended to (at the very least) abuse, humiliate, harass, or degrade her. There is little other reason for him to have continued that activity; at a bare minimum, a rational jury could so conclude. Indeed, as the district court emphasized, the defense never offered a "non-sexual explanation for Sigmon's touching of [B.S.] under her dress on her inner thigh." (DE124:26). "Viewed in the light most favorable to the verdict, and in the absence of any suggestion that the touching occurred in furtherance of a non-sexual purpose, . . . such behavior implies its own intent." *United States v. Lee*, 232 F.3d 653, 656 (8th Cir. 2000).

3. Sigmon's candid admissions during his testimony only bolster that inference and undermine the plausibility of his denials of intent. Even Sigmon, after watching the video, had to admit what was plain: that the conduct on the video "doesn't look good," (DE101:73, 89, 144); that B.S. "obviously . . . moved [Sigmon's] hand away," (DE101:87); that "[y]ou could assume that" B.S. didn't want Sigmon's hand up her dress from her repeated attempts to push him away, (DE101:157); and that B.S. "was not comfortable," (DE101:157). If a stranger had touched his daughter in the same manner, Sigmon testified, he would "punch them in the face." (DE101:77-78). Yet even he could not provide an affirmative explanation of his persistence through repeated attempts at offensive sexual contact that his daughter clearly did not want. The jury was entitled to credit the Occam's razor explanation: he had the intent to abuse, humiliate, harass, or degrade B.S.

Indeed, Sigmon's own denials of intent, "if disbelieved by the jury"—as they clearly were here—"may be considered as substantive evidence of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (emphasis omitted). "Defendants in criminal trials are not obliged to testify," *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004) (citation omitted), and "when a defendant takes the stand, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *United States v. Louis*, 146 F.4th 1328, 1340 (11th Cir. 2025) (quotation marks and citation omitted). Thus, "[w]here some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in [his] own defense, the Defendant's testimony, denying guilt, may establish, by itself, elements of the offense." *Williams*, 390 F.3d at 1326. That proposition "applies with special force" with respect to "highly subjective elements" like "the defendant's intent or knowledge," as for such issues, "[e]xperience tells us that . . . the appearance and demeanor of the witness[] is of particular significance." *Brown*, 53 F.3d at 315.

4. Sigmon's claim (Br. 23-24) that the government provided "zero evidence" as to his intent and instead relied on "insinuation and rank speculation" is therefore unsustainable. As described above, the jury was presented with substantial evidence of Sigmon's disturbing conduct, from which a rational jury could reasonably infer Sigmon's intent, and after considering Sigmon's credibility

and demeanor on the stand firsthand, the jury was entitled to disbelieve his denials and consider them as substantive evidence of his guilt. While Sigmon paints an alternative interpretation of the events of the dinner, "[a] jury is free to choose among reasonable constructions of the evidence," and "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Hardy*, 895 F.2d 1331, 1334 (11th Cir. 1990) (citation omitted).

Sigmon cites *United States v. Goldesberry*, 128 F.4th 1183 (10th Cir. 2025), an out-of-circuit case, for the proposition that "the government cannot prove *mens rea* simply by repeatedly proving *actus reus*." Br. 26. But there, the Tenth Circuit agreed that "[t]he government can, and ordinarily does, prove knowledge and intent through circumstantial evidence." *Goldesberry*, 128 F.4th at 1195 (citation omitted). And the facts here stand in sharp contrast to those of *Goldesberry*. There, the defendant's daughter climbed into the bed that the defendant shared with his wife, fell asleep, and awoke to the defendant touching her underneath her underwear. *See id.* at 1185-86. Charged with aggravated sexual abuse of a minor, the defendant claimed mistaken identity: he thought his daughter was actually his wife. *Id.* at 1187, 1195. Bolstering his case, testimony at trial (at which the defendant did not testify) established that his daughter rarely came into her parents' bedroom, that she did so that night in the dark while the defendant was asleep, and

that when confronted, the defendant immediately ceased contact, apologized, and explained that he had made a mistake. *Id.* at 1187, 1190-91, 1196-97, 1199.

A divided panel of the Tenth Circuit concluded that the government had failed to offer any evidence bearing on defendant's mens rea—specifically, evidence showing lack of mistake. *Id.* at 1203. The court emphasized, however, that "because sufficiency review requires us to view the evidence and all inferences in the government's favor, our conclusion may have been different if the government presented *any* evidence that suggested the touching did not occur by accident." *Ibid.* Ample evidence showed that here: Sigmon did not immediately stop after receiving "obvious" indications from B.S. that the touching was unwanted, but instead pressed on; far from making any kind of mistaken identity defense, Sigmon offered no alternative, innocent explanation for his behavior; and the jury was able to view multiple videos of the incident and assess Sigmon's demeanor on the stand.

Sigmon effectively asks (Br. 25) this Court to ignore the crucial events at issue, instead painting a picture of a happy family enjoying a cruise by pointing to B.S.'s actions after the sexual contact had ceased. But as Dr. Dickson explained to the jury, there are good reasons to expect minor victims not to immediately understand the gravity of sexual crimes committed against them by trusted adults. *See* (DE100:54-67) (testimony of Dr. Dickson explaining the concept of grooming);

(DE100:64) ("[A] child may respond in the moment in a variety of different ways, and they don't all necessarily include the child disclosing or calling out for help.").

"A fundamental premise of our criminal trial system is that the jury is the lie detector." *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (quotation marks, citation, and emphasis omitted). Sigmon vigorously made his case to the jury that he never intended to sexually abuse B.S. The jurors watched the videos, observed Sigmon's demeanor on the stand, applied their own common sense, and ultimately disbelieved his testimony. That was a judgment well within the province of a rational jury to make, and this Court should uphold the conviction on appeal.

## II. The district court did not abuse its discretion by denying Sigmon's motion for a new trial based on the jury's receipt of a copy of the indictment that included unredacted forfeiture allegations.

Sigmon separately contends (Br. 28-39) that the district court abused its discretion by denying Sigmon a new trial based on the jury's exposure to "extraneous information in the form of forfeiture allegations in an unredacted indictment." Br. 28. That claim likewise lacks merit. After a careful evaluation, the district court correctly determined that Sigmon did not suffer any prejudice from the inadvertent inclusion of the innocuous forfeiture allegations in the indictment.

### A. Background

1. The indictment in this case consists of two pages. The first page charges Sigmon with a single count of abusive sexual contact with a minor in

violation of 18 U.S.C. § 2244(a)(5). (DE11:1). Following that, the indictment contains a section denoted "FORFEITURE ALLEGATIONS," which reads, in full:

> 1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the Defendant, **JUSTIN DALE SIGMON**, has an interest.
>
> 2. Upon conviction of a violation of Title 18, United States Code, Section 2244, as alleged in this Indictment, the Defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2253(a):
>
> a. Any visual depiction described in Title 18, United States Code, Sections 2251, 2251A, or 2252, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Title 18, United States Code, Chapter 110;
>
> b. Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and
>
> c. Any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.
>
> All pursuant to Title 18, United States Code, Section 2253(a) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 2253(b).

(DE11:1-2).

Throughout the course of the proceedings, the court instructed the jurors in a variety of ways that their verdict should be based only on the evidence presented at trial and that the indictment—which was intended to be submitted to the jury in redacted form, (DE85:10)—was not evidence. When the jury was first selected, the

court told the prospective jurors that they "must presume that [Sigmon] is innocent of the allegations in the indictment," which it explained was "the charging instrument." (DE99:20). On the second day of trial, before the parties' opening statements, the court explained that the evidence the jurors were permitted to consider "consist[ed] of the testimony of witnesses, documents, and other items received into the record as exhibits, and any facts that the lawyers may agree or stipulate to," while the indictment "is only an accusation[,] nothing more" and "is not proof of guilt or anything else." (DE100:13, 16). Finally, the court's ultimate instructions at the end of the trial, which were delivered both orally and in writing, reiterated that the jury's decision "must be based only on the evidence presented" and that "[t]he indictment or formal charge against the defendant is not evidence of guilt." (DE103:48); (DE69:2).

2. On November 30, 2023, approximately two weeks after the jury returned a guilty verdict, the court held a status conference. (DE83). There, the court informed the parties that, earlier in the week, the clerk's office had called to advise the court that the forfeiture allegations may have been included in the version of the indictment sent to the jury during its deliberations, despite the court's usual practice of redacting them. (DE85:2, 8-10). Counsel for both parties stated that, though their recollections were not perfect, they believed they saw a copy of the indictment among the materials the court's staff had prepared for the jury.

(DE85:2-8). No one indicated whether they recalled forfeiture allegations being included. Following the conference, the court appointed the Federal Public Defender's Office as amicus curiae specifically to brief how the court should address the issue. (DE84).

Amicus filed a brief arguing that the forfeiture allegations constituted extrinsic evidence warranting vacatur of the conviction and a new trial. (DE104). And Sigmon himself moved for a new trial on that basis. (DE105:2-4). The court held oral argument on the motions, and also requested briefing from the parties on whether it should hold an evidentiary hearing with the jury to determine if they were exposed to extrinsic information. (DE115); (DE116); (DE154). And although the parties all opposed a hearing as unnecessary, (DE117); (DE118); (DE119), the court decided to hold an evidentiary hearing, concluding "that a colloquy of individual jurors will be helpful in making its factual findings and in determining whether the jurors' exposure to the forfeiture allegations was prejudicial to Defendant Sigmon," (DE120:4). At the hearing, the court gave each of the eleven jurors who appeared a copy of the unredacted indictment and individually asked each whether he or she recalled reading it in its entirety, including the portion with the forfeiture allegations. (DE156:11-24). Seven jurors answered yes. (DE156:25).

3. The court ultimately denied Sigmon's motion for a new trial. Concluding that the jury had been exposed to the unredacted indictment, the court

presumed prejudice to Sigmon from the forfeiture allegations but found that the government had sufficiently rebutted that presumption. (DE124:13-22). Specifically, the court found that "[t]he forfeiture allegations did not contain any factual allegations that were not introduced at trial." (DE124:21). Along with the "strength of the government's case" and the court's specific instructions to the jury that the indictment did not constitute evidence which the jury could consider, (DE124:18-19), the court determined that the "not prejudicial" language of the forfeiture allegations rendered their inclusion in the indictment harmless, (DE124:22).

The court specifically rejected amicus's argument that the forfeiture count would have suggested to the jury that Sigmon possessed child pornography. (DE124:21-22). The court observed that the language "d[id] not contain any reference to child pornography" and that "there was no evidence of child pornography" in the case. (DE124:21-22). And it accordingly reasoned that the jury likely believed that the references to "visual depiction[s]" in the indictment were to the evidence admitted during the trial—which had included numerous videos and pictures (DE124:19, 21)—not to child pornography. (DE124:22).

**B. Standard of Review**

The Sixth Amendment guarantees the right to trial by an impartial jury. U.S. Const. amend. VI. One aspect of that right is that "[t]he jury must determine guilt

solely on the basis of the evidence presented at trial and the court's instructions as to the applicable law." *United States v. Siegelman*, 640 F.3d 1159, 1182 (11th Cir. 2011). Extrinsic evidence that "taint[s] the jury's deliberations . . . denies a defendant his rights to trial by an impartial jury and to challenge the facts adverse to him that are made known to the jury." *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir. 1979).[4] But this Court presumes that the jury is impartial. *Siegelman*, 640 F.3d at 1182.

Determining the jury's impartiality is a task "particularly within the province of the trial judge." *United States v. Ronda*, 455 F.3d 1273, 1301 (11th Cir. 2006) (citation omitted). "[W]here a party alleges that the jury was subject to extrinsic influence," the district court "has a duty to investigate only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." *United States v. Brown*, 934 F.3d 1278, 1303 (11th Cir. 2019). The defendant "must do more than speculate; he must show clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred." *United States v. Benjamin*, 958 F.3d 1124, 1136 (11th Cir. 2020) (quotation marks, ellipsis, and citation omitted).

[4] Decisions of the former Fifth Circuit issued before close of business on September 30, 1981 are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Alleging that the jury merely viewed extraneous information is not enough; to trigger the court's duty to investigate, the nature of the extrinsic influence must be "inherently prejudicial." *Benjamin*, 958 F.3d at 1137. This Court has taken the view that if the defendant carries that burden, "prejudice to the defendant is presumed and the burden shifts to the government to show that the jurors' consideration of extrinsic evidence was harmless to the defendant." *Siegelman*, 640 F.3d at 1182 (quotation marks and citation omitted).[5] Whether the defendant was prejudiced is ultimately a factual determination "committed to the [trial] court's large discretion." *United States v. Rowe*, 906 F.2d 654, 657 (1990) (quotation marks and citation omitted).

This Court accordingly reviews the district court's denial of a motion for a new trial based on allegations that the jury was exposed to prejudicial extrinsic evidence for abuse of that discretion. *United States v. Khanani*, 502 F.3d 1281, 1291 (11th Cir. 2007). Under the abuse-of-discretion standard, this Court will

[5] As discussed *infra* pages 26-31, the presumptive-prejudice rule derives from the Supreme Court's decision in *Remmer v. United States*, 347 U.S. 227 (1954). As this Court has recognized, other "circuits have suggested that since *Remmer*, the Supreme Court has abandoned, at least in part, the presumption of prejudice arising from the exposure of the jury to extrinsic evidence." *Boyd v. Allen*, 592 F.3d 1274, 1305 n.9 (11th Cir. 2010) (quoting *United States v. Ronda*, 455 F.3d 1273, 1299 n.36 (11th Cir. 2006)); *cf. United States v. De La Vega*, 913 F.2d 861, 870 (11th Cir. 1990) (placing "the burden of demonstrating prejudice" from the jury's consideration of extrinsic evidence on the defendant and noting that "[p]rejudice is not presumed") (citation omitted).

reverse only if the district court "applies an incorrect legal standard," "follows improper procedures in making the determination," "makes findings of fact that are clearly erroneous," or "commits a clear error of judgment." *United States v. Harris*, 989 F.3d 908, 911-12 (11th Cir. 2021). "The application of an abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach," *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc), and this Court will not "reverse just because [it] might have come to a different conclusion had it been [its] call to make," *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007).

### C. Discussion

The district court did not abuse its discretion by denying Sigmon's motion for a new trial because the jury's exposure to the unredacted allegations was harmless.

#### 1. The unredacted forfeiture allegations do not trigger a presumption of prejudice.

As an initial matter, the jury was not exposed to any extrinsic evidence that would trigger a presumption of prejudice in the first place.

a. The presumptive-prejudice approach originated with the Supreme Court's decision in *Remmer v. United States*, 347 U.S. 227 (1954). In *Remmer*, a defendant who had been convicted on criminal charges sought a new trial after learning that, during the trial, a third party had offered to bribe a member of the jury in exchange for a not-guilty verdict. *See id.* at 228. The district court denied the

defendant's motion for a new trial without a hearing. *Id.* at 228-29. The Supreme Court remanded the case to the district court "with directions to hold a hearing to determine whether the incident complained of was harmful to the" defendant, stating that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." *Id.* at 229-30.

This Court has applied a presumption of prejudice to extrinsic contacts including, for example, attempts by third parties to directly influence members of the jury, *see United States v. Forrest*, 620 F.2d 446, 456-59 (5th Cir. 1980); *United States v. Spurlock*, 811 F.2d 1461, 1462-64 (11th Cir. 1987), exposure to news coverage about the case, *see United States v. Martinez*, 14 F.3d 543, 547-52 (11th Cir. 1994); *Ronda*, 455 F.3d at 1297-1301; *Siegelman*, 640 F.3d at 1184-85, and evidence of the defendant's prior criminal history deemed inadmissible, *see United States v. Dortch*, 696 F.3d 1104, 1109-11 (11th Cir. 2012), *overruled in part on other grounds by Alleyne v. United States*, 570 U.S. 99 (2013); *United States v. Whatley*, 719 F.3d 1206, 1213, 1219-21 (11th Cir. 2013).

Given that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote," *Smith v. Phillips*, 455 U.S. 209, 219 (1982), not every exposure of the jury to extrinsic information triggers a presumption of prejudice. In particular, this Court has not presumed prejudice in

cases involving undisputed exposure of the jury during deliberations to extraneous information that was not "inherently prejudicial" in nature. *Benjamin*, 958 F.3d at 1137. In *United States v. Benjamin*, for example, the jury had access to an external list of "do's and don'ts" regarding jury service during its deliberations. *Id.* at 1135-37. But the list made "no mention of any of the particulars of [the defendant's] case or the evidence presented at trial" and there was no "indication that a jury reading this list of do's and don'ts would be more likely to vote to convict." *Id.* at 1137. This Court therefore concluded that the defendant "ha[d] not made the requisite showing" of exposure to prejudicial information to satisfy his initial burden and that the district court did not abuse its discretion by declining to investigate the matter further. *Ibid.*

The Court likewise found that the defendants had failed to meet their initial burden in *United States v. Venske*, 296 F.3d 1284 (11th Cir. 2002). There, defendants who were found guilty for their roles in a fraudulent telemarketing scheme moved for a new trial, relying on an affidavit by a private investigator that alleged that (1) an ex-fiancé of one of the jurors, Hart, had told Hart that the ex-fiancé's mother had purchased the defendants' products prior to Hart being selected for the jury, and that (2) Hart had spoken openly with non-jurors about the trial and expressed his belief that the defendants were guilty. *Id.* at 1286-88.

This Court concluded that "[n]either of these statements show extrinsic influence on Juror Hart or any other juror." *Id.* at 1290. Even assuming that the communications had occurred, the private investigator's affidavit did "not allege that Hart was influenced by these external communications, and neither [of the defendants] offer[ed] any other evidence to show that juror Hart was influenced in any way." *Ibid.* The Court accordingly found that the district court had not abused its discretion in finding that the communications were "not sufficient evidence of . . . extrinsic influence on the jury." *Ibid.*

b. Here, the allegedly "extrinsic evidence" provided to the jury was the general forfeiture language contained within the indictment itself. Boilerplate forfeiture allegations are not the kind of external influence *Remmer* is designed to guard against. Sending a copy of the indictment back with the jury during deliberations is a well-established practice among district courts in this Circuit and throughout the country. *See*, *e.g.*, *United States v. Tucker*, 526 F.2d 279, 283 (5th Cir. 1976) ("[I]t is permissible for a properly instructed jury to have copies of the indictment during deliberation."); *United States v. Warner*, 638 F. App'x 961, 964 (11th Cir. 2016) (same). The same is true of other documents not admitted into evidence, like transcripts of videos, exhibit lists, and copies of the jury instructions, none of which have ever been understood to trigger a presumption of prejudice.

The United States is required to include forfeiture allegations within the indictment, *see* Fed. R. Crim. P. 32.2(a), and Sigmon never moved to strike the allegations under Rule 7(d). Though the usual practice in the Southern District of Florida may be to redact forfeiture allegations before sending the indictment to the jury, Sigmon has not cited any precedent, nor has the government found any, standing for the proposition that failure to do so triggers a presumption of prejudice to the defendant.[6] The Court should not apply such a presumption here.

The forfeiture allegations do not accuse the defendant of a crime, or, indeed, of any substantive conduct at all. Nor do they tell the jury any facts about the case that it otherwise was not entitled to know. They do not even suggest the gravity of the crime of which the defendant stands accused, but instead simply reflect the forfeitability of any property—the nature of which is unspecified—that is connected to the offense. Unlike cases in which this Court has applied a presumption of prejudice—for example, a member of the public soliciting a juror's vote, the

---

[6] The only case that the government has been able to locate that dealt with this specific issue is *United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988). In *Feldman*, during the guilt phase of the trial, the page of the indictment alleging forfeiture was submitted to the jury due to a clerk's error. *Id.* at 664. The court clerk retrieved the copies of the indictment and, after questioning the jurors, determined that only one juror had reviewed the unredacted indictment. *Ibid.* The district court denied the defendant's motion for a mistrial, and the Ninth Circuit found no abuse of discretion in that decision. *Id.* at 664-65. *Feldman*'s treatment of the issue is short; it does not cite *Remmer* and does not appear to apply a presumption of prejudice.

exposure of the jury to facts outside the record, or allegations of prior criminal wrongdoing on the part of the defendant—there is no inherent reason to assume that any juror would have been influenced, one way or the other, by such forfeiture language. *See Benjamin*, 958 F.3d at 1137; *Venske*, 296 F.3d at 1290. And here, the district court properly and repeatedly instructed the jury that the indictment was not evidence. If those instructions were sufficient to eliminate any presumptive prejudice from presenting the jury with the portion of the indictment which contained actual allegations of criminal conduct, (DE11:1), it was *a fortiori* sufficient to eliminate any presumptive prejudice from presenting the jury with the innocuous boilerplate forfeiture allegations, (DE11:1-2).

**2. Even if presumptively prejudicial, the jury's exposure to the indictment's unredacted forfeiture allegations was harmless.**

In any event, even if a presumption of prejudice applies, the district court did not abuse its discretion by finding that the jury's exposure to the forfeiture allegations was ultimately harmless. When reviewing a district court's determination of harmlessness on appeal, this Court will consider "(1) the nature of the extrinsic evidence; (2) the manner in which it reached the jury; (3) the factual findings in the district court and the manner of the court's inquiry into the juror issues; and (4) the strength of the government's case." *Whatley*, 719 F.3d at 1219 (brackets and citation omitted). All four factors support the district court's finding of harmlessness here.

a. *Nature of the extrinsic evidence.* The first factor strongly weighs against a finding of prejudice. Exposure to extrinsic information is harmless where the information is "innocuous and cumulative of information properly before the jury." *Siegelman*, 640 F.3d at 1184. As discussed, the language of the forfeiture allegation did not accuse Sigmon of a crime. And as the district court recognized, it also "did not contain any factual allegations that were not introduced at trial." (DE124:21). Indeed, it is difficult to discern any factual information at all that a juror might have gleaned from it.

Furthermore, to whatever extent there could be any factual allegations construed from its language, the forfeiture count was presented as part of the indictment, which the district court instructed constituted only allegations and could not be considered as evidence. (DE69:2); (DE99:20); (DE100:13, 16); (DE103:48). A court "presume[s] that the jury followed these instructions," *Dortch*, 696 F.3d at 1111, and this Court has declined to find prejudice from a failure to redact portions of an indictment where "the jury was repeatedly instructed that the indictment was not evidence of guilt," *Siegelman*, 640 F.3d at 1184; *accord Dortch*, 696 F.3d at 1111.

*The manner in which the extrinsic evidence reached the jury.* There was no discussion on the record at the conclusion of the trial about providing the indictment to the jury. Recollections of the lawyers and the court at the posttrial status

conference suggested that the court or its staff likely printed and included the unredacted indictment with the materials sent back to the jury room during deliberations—materials that both parties had the opportunity to view, and to which neither party objected. *See* (DE85:2-8). Where extrinsic information reaches the jury through "inadvertence attributable to both the United States and [the defendant]," the district court is "entitled to weigh the second factor in favor of the conclusion that the exposure was harmless." *Whatley*, 719 F.3d at 1220; *see United States v. Anderson*, 329 F. App'x 878, 886 (11th Cir. 2009) (noting that "because [the defendant] did not raise any objection to the superseding indictment" that erroneously included defendant's inadmissible prior felony conviction "at the time it was submitted to the jury, the defendant undeniably bears some responsibility for the mistake").

*The manner of the court's inquiry.* The district court conducted a careful, thorough inquiry into the jury's exposure to the forfeiture allegations. The court raised the issue of extrinsic evidence with the parties *sua sponte* after being alerted by the court clerk to the possibility that the jury was sent an unredacted version of the indictment. (DE85:2, 8-10). Following a conference with the parties, the court appointed an amicus for the defendant specifically to address the extrinsic evidence issue and held, over all parties' objections, an evidentiary hearing to determine whether the unredacted allegations actually reached the jury. (DE84); (DE123).

Following this "careful investigation"—indeed, a more thorough investigation than any party had requested—the district court's ultimate conclusion that Sigmon was not prejudiced "demands deference" as a determination "particularly within the province of the trial judge." *Ronda*, 455 F.3d at 1300-01 (citation omitted).

*The strength of the government's case.* Finally, as described *supra* pages 9-19, the government's case for guilt was strong. Few child sexual-abuse cases are caught on video for the jury to see with their own eyes. The jury viewed this evidence, evaluated Sigmon's credibility, and deliberated for less than four hours before returning a guilty verdict.

b. Sigmon's contrary arguments lack merit. Sigmon argues (Br. 33) that the jury, reading the legalistic language of the forfeiture count, "could only have understood it to be referring to the possession of child pornography." No juror would have drawn that conclusion. As detailed earlier, the challenged portion reads as follows:

> 2. Upon conviction of a violation of Title 18, United States Code, Section 2244, as alleged in this Indictment, the Defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2253(a):
>
> > a. Any visual depiction described in Title 18, United States Code, Sections 2251, 2251A, or 2252, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Title 18, United States Code, Chapter 110.

(DE11:2). The statutory references are not self-defining; only a lawyer well-versed in federal sex-crime prosecutions would have recognized them as referring to child sexual-abuse material. And the jury was instructed not to undertake any research or investigation about the case on their own. (DE100:17-18).

Nor would the jury have understood this language to refer to child pornography from the evidence introduced at trial. The government's witnesses and Sigmon alike testified that there was no child pornography found on Sigmon's phone. *See* (DE100:123) (Officer Silva); (DE101:14) (Agent LeMaitre); (DE101:129-30) (Sigmon). If the jury considered the issue at all, the more natural conclusion would have been, as the district court found, that the "visual depiction[s]" described referred to the numerous photos from Sigmon's phone and/or the videos of Sigmon's offense conduct that were properly admitted into evidence and repeatedly shown and referenced at trial. *See* (DE124:21-22).[7] Most likely, the jury was simply puzzled and ignored the language altogether, assuming that—as with many things at trial—it was just one more thing that it was not entitled to know.

---

[7] With respect to the photos on his phone, Sigmon argues that, because his phone was seized by the government, "[i]t defies logic to order him to forfeit something the government already possessed." Br. 34. But that assumes that the jury understood the government to still possess the phone and to be entitled automatically to keep it (or, at least, to remove images from it) if Sigmon were convicted; neither assumption is evident from the record. And in practice, the government routinely seeks forfeiture of property seized from a defendant already in the government's custody. *See* 21 U.S.C. § 853(f) (permitting the seizure of property that would be subject to forfeiture in the event of a criminal conviction).

Sigmon asserts (Br. 37) that the government "insinuat[ed]" in its closing argument that Sigmon possessed child pornography. But the prosecutor was merely responding to defense counsel's (accurate) statement in his closing that "nothing having to do with child pornography" was found on Sigmon's phone. (DE103:24). In response, the prosecutor stated in her closing:

> Defense counsel said that there was no child pornography on his phone. The phone that he used for his personal use was a work phone. This man is No. 2 in the sheriff's office. He's not going to have child pornography on his phone. He also said that he deleted items on the cruise after cruise ship security confronted him. We don't know what that is; and, unfortunately, we can't recover all deleted information. We'll never know. But if he had no child pornography on his phone ever, it wouldn't be a surprise; right? Because he's trying to make sure that he's not discovered.

(DE103:41). The prosecutor went on to highlight that the images that *were* found on Sigmon's phone were nevertheless "developmentally inappropriate." (DE103:41). Sigmon did not object to the prosecutor's argument, suggesting that nobody at the time understood it to insinuate that Sigmon had, indeed, possessed child pornography. Instead, the clear thrust of the prosecutor's argument was that the jury should not conclude from the mere fact that Sigmon did not possess child pornography that he could not have committed the charged offense. That takes, as a premise, that no child pornography was ever found—and thus, could not be forfeited to the government.

In addition, the district court instructed the jury that it could consider "only the evidence that I have admitted in the case" and that "anything the lawyers say is

not evidence and is not binding on you." (DE103:49). In the context of claims of prosecutorial misconduct from improper closing arguments by counsel, this Court routinely credits instructions from the district court that the jury must base its decision only on the evidence admitted, not the statements of counsel, as curing any potential prejudice. *See*, *e.g.*, *United States v. Lopez*, 590 F.3d 1238, 1256-57 (11th Cir. 2009). The same logic applies here, where Sigmon's claim for prejudice is based on a hypothetical connection the jury assertedly could have made between the government's closing argument (which it was specifically instructed was not evidence) and the forfeiture allegations contained in the indictment (which it was specifically instructed also were not evidence).

Sigmon posits (Br. 34-35) that, even if the jury did not infer that the forfeiture language referred to child pornography, the language could have suggested that Sigmon violated some other law. But the language contains no such suggestion. To the contrary, the forfeiture count is a conditional expression of what would happen ("the Defendant shall forfeit" certain, unspecified property) "[u]pon conviction" for the charged offense "as alleged in this Indictment," which charged abusive sexual contact with a minor. (DE11:1-2). The jury was instructed that its role is to assess whether the government had proved the defendant's guilt as to the charged offense (abusive sexual contact with a minor) beyond a reasonable doubt, (DE103:53-54); the language of the forfeiture allegation did not alter anything in

that respect. And, again, even if the jury could have gleaned anything from the language, the district court instructed the jury that it could base its decision only on the admitted evidence and that nothing in the indictment constituted evidence. This Court routinely finds actual statements about a defendant's uncharged criminal history harmless when paired with appropriate curative instructions. *See*, *e.g.*, *Whatley*, 719 F.3d at 1219-21 (fleeing the police, possession of a firearm by a felon, theft by receiving stolen property); *Dortch*, 696 F.3d at 1109, 1111 (five previous felony convictions, including for possession of marijuana with intent to sell "that was virtually identical" to a charged count); *United States v. Kirkwood*, 412 F. App'x 259, 261 (11th Cir. 2011) (possession of heroin with intent to deliver); *Anderson*, 329 F. App'x at 885-87 (tampering with evidence and resisting an officer with violence). Compared to concrete allegations of specific criminal conduct, an ambiguous reference that might be misconstrued as a reference to unspecified, other criminal violations is an *a fortiori* case.

Finally, Sigmon suggests (Br. 31-32) that, because the district court only asked each juror whether he or she had read the entirety of the indictment without conducting "follow-up," the manner of the court's investigation should not be credited toward its finding of harmlessness. But because the issue came to light only after the jury's verdict, Federal Rule of Evidence 606(b) permitted the court only to inquire about any exposure of the jury to extrinsic information, not the

"subjective effects of any [such information] on any jurors." *United States v. Perkins*, 748 F.2d 1519, 1534 n.15 (11th Cir. 1984) (citing *United States v. Howard*, 506 F.2d 865, 868-69 (5th Cir. 1975)). The district court recognized that limitation and appropriately tailored its inquiry. *See* (DE156:7) (recognizing that the court is "not allowed to pry into why a jury may have voted in a particular way"). The district court cannot have abused its discretion in denying Sigmon's motion for a new trial by virtue of its failure to violate Rule 606(b). *See United States v. Abbell*, 271 F.3d 1286, 1304 n.20 (11th Cir. 2001) (cautioning "district courts to be careful about invading the secrecy of the jury's deliberations and to err on the side of too little inquiry as opposed to too much").

## Conclusion

For the foregoing reasons, this Court should affirm.

Respectfully submitted,

Jason A. Reding Quiñones
United States Attorney

By: */s/ Alan Chen*
Alan Chen
Attorney, U.S. Department of Justice
950 Pennsylvania Avenue NW
Room 5621
Washington, D.C. 20530
(202) 353-0565

Emily M. Smachetti
Acting Chief, Appellate Division

Alan Chen
Attorney, U.S. Department of Justice

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,658 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, 14-point Times New Roman font.

## Certificate of Service

I HEREBY CERTIFY that the foregoing Brief for the United States was filed using CM/ECF on this 15th day of December, 2025, and that, on same day, the foregoing brief was served via CM/ECF on Hector A. Dopico, Interim Federal Public Defender, Federal Public Defender's Office and Anshu Budhrani, Assistant Federal Public Defender, counsel for Justin Sigmon.

*/s/ Alan Chen*
Alan Chen
Attorney, U.S. Department of Justice

***ags***