No. 24-14236-JJ

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

JUSTIN SIGMON,
*Defendant/Appellant*.

On Appeal from the United States District Court
for the Southern District of Florida

# REPLY BRIEF OF APPELLANT JUSTIN SIGMON

HECTOR A. DOPICO
Federal Public Defender
ANSHU BUDHRANI
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 530-7000

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL CASE)

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

**United States of America v. Justin Sigmon**
**Case No. 24-14236-JJ**

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Astigarraga, Lauren Alexandra

Bharathi, Sowmya

Budhrani, Anshu

Calderon, Marx

Caruso, Michael

Chen, Alan

Davis, Michael S.

Dopico, Hector A.

Doty, George E. III

Fernandez, Bertila

Flores, Hector L.

Goodman, Hon. Jonathan

Graham, Hon. Donald L.

Jayanthi, Srilekha

Lapointe, Markenzy

Louis, Hon. Lauren Fleischer

Matzkin, Daniel

Monk, Lacee Elizabeth

Obenauf, Jessica Kahn

O'Byrne, Hayden P.

Reding Quiñones, Jason

Reid, Hon. Lisette M.

Sigmon, Justin Dale

Silverstein, Joan

Smachetti, Emily M.

Stanley, William

United States of America

Williams, Hon. Kathleen M.

*/s/ Anshu Budhrani*
Anshu Budhrani

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

TABLE OF CITATIONS ........ iii

ARGUMENT AND CITATIONS TO AUTHORITY ........ 1

I. The Evidence Was Insufficient to Establish Beyond a Reasonable Doubt that Mr. Sigmon Acted with the Specific Intent Required for Abusive Sexual Contact ........ 1

II. The District Court Abused its Discretion in Denying Mr. Sigmon a New Trial Because the Government Failed to Rebut the Presumption of Prejudice that Attached from the Jury's Confirmed Exposure to the Unredacted Forfeiture Allegations in the Indictment ........ 8

A. The *Remmer* Presumption of Prejudice Applies ........ 9

B. The Government Failed to Rebut the Presumption of Prejudice to Mr. Sigmon from the Jury's Exposure to Unredacted Forfeiture Allegations in the Indictment ........ 17

CONCLUSION ........ 32

CERTIFICATE OF COMPLIANCE ........................................................ 33

CERTIFICATE OF SERVICE .................................................................. 34

**TABLE OF CITATIONS**

**Cases**

*Alleyne v. United States*,

570 U.S. 99 (2013) .......... 13

*Carruth v. Comm'r, Alabama Dep't of Corr.*,

93 F.4th 1338 (11th Cir. 2024) .......... 9

*Remmer v. United States*,

347 U.S. 227 (1954) .......... 9, 10

*Turner v. Louisiana*,

379 U.S. 466 (1965) .......... 9

*United States v. Benjamin*,

958 F.3d 1124 (11th Cir. 2020) .......... 10, 11, 16

*United States v. Brown*,

53 F.3d 312 (11th Cir. 1995) .......... 6

*United States v. Brown*,

934 F.3d 1278 (11th Cir. 2019) .......... 11

*United States v. Cuthel*,

903 F.2d 1381 (11th Cir. 1990) .......... 11

*United States v. Dortch*,

696 F.3d 1104 (11th Cir. 2012) .................................................... 13, 14

*United States v. Goldesberry*,

128 F.4th 1183 (10th Cir. 2025) ........................................................ 4, 5

*United States v. Lee*,

232 F.3d 653 (8th Cir. 2000) ............................................................... 3

*United States v. Louis*,

146 F.4th 1328 (11th Cir. 2025) ......................................................... 6, 7

*United States v. Martinez*,

14 F.3d 543 (11th Cir. 1994) ........................................................ 30, 31

*United States v. Norman T.*,

129 F.3d 1099 (10th Cir. 1997) ........................................................... 3

*United States v. Perkins*,

748 F.2d 1519 (11th Cir. 1984) ........................................... 25, 28, 30

*United States v. Siegelman*,

640 F.3d 1159 (11th Cir. 2011) .................................................... 13, 24

*United States v. Venske*,

296 F.3d 1284 (11th Cir. 2002) .......................................................... 11

*United States v. Whatley*,
719 F.3d 1206 (11th Cir. 2013) .................................................... 13, 21

*United States v. Williams*,
390 F.3d 1319 (11th Cir. 2004) .................................................... 6, 7, 8

*Ward v. Hall*,
592 F.3d 1144 (11th Cir. 2010) .................................................... 10, 24

**Statutes**

18 U.S.C. § 2244(a)(5) ............................................................................ 2

18 U.S.C. § 2244(b) ................................................................................. 2

**Other Authorities**

Fed. R. Crim. P. 32.2(a) ........................................................................ 15

Fed. R. Crim. P. 32.2(b) ........................................................................ 15

Fed. R. Evid. 606(b)(2)(A) ..................................................................... 24

## ARGUMENT AND CITATIONS TO AUTHORITY[1]

### I. THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT MR. SIGMON ACTED WITH THE SPECIFIC INTENT REQUIRED FOR ABUSIVE SEXUAL CONTACT

The government's response to Mr. Sigmon's sufficiency argument ultimately proves Mr. Sigmon's point. In its briefing on appeal, the government almost exclusively focuses on the video of the incident itself as providing sufficient evidence of Mr. Sigmon's specific intent, effectively abandoning the other evidence it introduced at trial—Dr. Dickson's testimony; observations that Mr. Sigmon's phone was full of photos of his youngest daughter while lacking photos of his wife in a bathing suit (DE 101:14); and testimony suggesting Mr. Sigmon's text messages with his wife lacked romantic warmth (DE 101:15–16). But that evidence was not admitted by the government for no reason. It reflected the government's own understanding that the video alone was insufficient to establish Mr. Sigmon's specific intent beyond a reasonable doubt. The government's decision to abandon that theory on appeal is the most telling concession

[1] Mr. Sigmon files this Reply Brief to respond to certain factual assertions and arguments contained in the Brief for the United States ("Gov't Br."). By filing this Reply Brief, Mr. Sigmon neither waives any point made in his initial brief ("App. Br."), nor concedes any point contained in the government's brief.

in its brief—if the act alone supplied the intent, none of that other evidence would have been necessary.

The government's entire sufficiency argument reduces to this: Mr. Sigmon touched his daughter's inner thigh repeatedly, despite her pushing his hand away, therefore, the jury could infer he intended to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. But that argument transforms 18 U.S.C. § 2244(a)(5) into a strict liability offense—one where the unwanted touching of the enumerated body part alone supplies both the actus reus and the mens rea. That is not the statute Congress enacted. Instead, Congress enacted two separate and distinct offenses: a felony under § 2244(a)(5) requiring intentional touching with specific criminal intent, and a misdemeanor under 18 U.S.C. § 2244(b) requiring only an intentional touching of the same body parts, with no specific intent requirement. The existence of the misdemeanor offense confirms what the plain text already establishes: the act of an intentional touching, standing alone, is not enough to satisfy § 2244(a)(5). Congress drew a deliberate line between touching and touching with criminal intent, which the government's sufficiency argument erases.

The government relies on *United States v. Norman T.*, 129 F.3d 1099 (10th Cir. 1997), and *United States v. Lee*, 232 F.3d 653 (8th Cir. 2000), for the proposition that circumstances can imply intent. (Gov't Br. 14–15.) In *Norman T.*, a fourteen-year-old boy waited until he and his five-year-old cousin were alone before digitally penetrating her genitalia so forcefully that he caused bleeding that persisted the next day, and then threatened her into silence. 129 F.3d at 1101, 1104. The Tenth Circuit held that jurors could have found the required intent "based on the circumstances surrounding the incident." *Id.* at 1104. In *Lee*, the defendant entered an eleven-year-old girl's bedroom at night while her mother was away and touched her genitals while he believed she was asleep. 232 F.3d at 655–56. The Eighth Circuit found that conduct implied its own intent "in the absence of any suggestion that the touching occurred in furtherance of a non-sexual purpose." *Id.* at 656. The common thread in both cases is a set of circumstances—privacy inside a home; a child alone and vulnerable; direct genital contact—that leaves no room for an innocent explanation.

Those are not the circumstances here. Mr. Sigmon touched his daughter's leg at a family dinner in a crowded cruise ship restaurant, in

public, with his wife and teenage daughter seated directly across the table. Strangers at the adjacent table were watching closely enough to film him on a cell phone. Surveillance cameras captured the entirety of the incident. There was no concealment, no isolation, no furtive conduct. The touching lasted less than five minutes of an hour-long dinner. Afterward, his daughter climbed back into his lap and took selfies with him. These circumstances leave ample room for an innocent explanation, and, in fact, affirmatively suggest one. The predicate conditions the Eighth Circuit attached to the "implies its own intent" rule—at night, in a private bedroom, and in the absence of any suggestion of a non-sexual purpose—are not satisfied here. The public setting, the brevity, and the presence of Mr. Sigmon's wife and older daughter directly across the table are themselves a suggestion that the touching did not occur with criminal intent. Such facts render any inference of criminal intent beyond a reasonable doubt precisely the kind of speculation due process strictly prohibits.

Contrary to the government's assertions otherwise (Gov't Br. 17–28), *United States v. Goldesberry*, 128 F.4th 1183 (10th Cir. 2025), is on point here. As the Tenth Circuit explained, "the government cannot

prove *mens rea* simply by repeatedly proving *actus reus*—unless . . . the separate *mens rea* inference may be made beyond a reasonable doubt. Here it could not." *Id.* at 1200 (internal quotation marks and citation omitted). When "the evidence must be buttressed by surmise and conjecture, rather than logical inference in order to support a conviction, such conviction cannot be allowed to stand." *Id.* (quotation marks omitted). The government attempts to distinguish *Goldesberry* by arguing that there, the defendant had a plausible mistaken-identity defense while here, Mr. Sigmon offered no innocent explanation. That misreads both *Goldesberry* and the record here. The Tenth Circuit in *Goldesberry* did not reverse the conviction because the defendant had an innocent explanation; it reversed because the government failed to produce affirmative evidence of mens rea sufficient to exclude the innocent explanation beyond a reasonable doubt. And Mr. Sigmon did offer an explanation: he stated he was mindlessly rubbing his daughter's leg, unaware of how high his hand was or how it appeared. (DE 101:70.)

The government's argument that this explanation is implausible because of what the video shows is just another way of saying the actus reus disproves the innocent explanation—the same circular reasoning

*Goldesberry* rejected. Moreover, *Goldesberry* involved a completely dark bedroom; the defendant alone with his daughter in the middle of the night; and direct touching of her genitalia—circumstances far more consistent with criminal intent than the touching of a leg in a public dining room during a family dinner. If that evidence was insufficient, the evidence introduced by the government here is even more so.

Finally, the government invokes *United States v. Brown*, 53 F.3d 312 (11th Cir. 1995); *United States v. Williams*, 390 F.3d 1319 (11th Cir. 2004); and *United States v. Louis*, 146 F.4th 1328 (11th Cir. 2025), for the proposition that Mr. Sigmon's own denials of intent constitute substantive evidence of guilt sufficient to sustain the verdict. (Gov't Br. 16.) A careful reading of those decisions reveals that the government has fundamentally misapplied them.

The *Brown* principle is that a defendant's testimony, if disbelieved, "may be considered as *substantive evidence* of the defendant's guilt," but only where "some corroborative evidence of guilt exists for the charged offense." 53 F.3d at 314–15 (emphasis in original). The principle functions as a bolster to an already sufficient case, not a bridge over an evidentiary gap. In *Williams*, the Court independently identified

sufficient evidence of guilt before it ever invoked *Brown*. 390 F.3d at 1325. And Judge Corrigan, in concurrence, wrote separately to reiterate that courts may not affirm "on the supposition that the defendant's demeanor filled the gap in the government's proof lest appellate review concerning the sufficiency of the evidence become meaningless in cases where the defendant testifies and denies guilt." *Id.* at 1326 (Corrigan, J., concurring). He also noted that post-*Brown* decisions had "reiterated the government's fundamental obligation to establish its case-in-chief." *Id.* (quotation marks omitted). In *Louis*, the Court reached the defendant's testimony only after finding "more than enough evidence" independent of that testimony. 146 F.4th at 1339–40. The Court's citation of *Brown* was a coda to an already overwhelming case.

In none of these decisions did the defendant's disbelieved testimony serve as the primary evidence of the disputed element. But that is precisely what the government asks for here. The government's case-in-chief produced no affirmative evidence of specific intent. The video established the act, which Mr. Sigmon has never disputed. The government then introduced the generalized testimony of Dr. Dickson and Agent Lemaitre's innuendo about photographs and text messages

from Mr. Sigmon's phone as evidence of intent. But this speculative, generalized testimony and innuendo does not satisfy "the government's fundamental obligation to establish its case-in-chief." *Williams*, 390 F.3d at 1326 (Corrigan, J., concurring). As such, when Mr. Sigmon took the stand and denied criminal intent, there was no independently sufficient foundation for his disbelieved denial to bolster. The government is not using his testimony to add to what it already proved—it is using it to prove what it never proved at all. That is precisely what the concurrence in *Williams* warned against, and this Court should not permit it here.

The government's evidence established the act. It did not establish the intent, and certainly not beyond a reasonable doubt. This Court should reverse and remand for entry of a judgment of acquittal.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MR. SIGMON A NEW TRIAL BECAUSE THE GOVERNMENT FAILED TO REBUT THE PRESUMPTION OF PREJUDICE THAT ATTACHED FROM THE JURY'S CONFIRMED EXPOSURE TO THE UNREDACTED FORFEITURE ALLEGATIONS IN THE INDICTMENT

It is undisputed that at least seven jurors read the forfeiture allegations in the unredacted indictment during their deliberations. The district court found that Mr. Sigmon made a colorable showing of exposure to extrinsic information, correctly presumed prejudice, and

shifted the burden to the government to demonstrate harmlessness. The government failed to do so, and now argues that the *Remmer* presumption should not have applied in the first place, and that even if it does, the district court's harmlessness finding was not an abuse of discretion. Neither argument survives scrutiny.

### A. The *Remmer* Presumption of Prejudice Applies

The Sixth Amendment guarantees the right to trial by an impartial jury—meaning a jury that determines guilt solely on the basis of evidence that "come[s] from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 473 (1965). Juror contact with evidence that does not meet that standard "is presumptively prejudicial." *Carruth v. Comm'r, Alabama Dep't of Corr.*, 93 F.4th 1338, 1353 (11th Cir. 2024); *see also Remmer v. United States*, 347 U.S. 227, 229 (1954) ("In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . deemed presumptively prejudicial."). The government can overcome this presumption only by carrying its heavy burden of showing that the

contact did not harm the defendant. *Remmer*, 347 U.S. at 229; *Ward v. Hall*, 592 F.3d 1144, 1180 (11th Cir. 2010).

Contrary to the government's insinuations otherwise, the presumption-of-prejudice rule announced in *Remmer* is not a doctrine in tension or retreat. *Remmer* has been reaffirmed as binding precedent in this Circuit numerous times, including in *Siegelman*, *Dortch*, *Whatley*, *Ward*, and most recently *Carruth*—a published opinion from 2024. The government is asking this Court to limit a presumption that a recent panel of this Court reaffirmed without qualification. Such a request has no anchor in this Court's precedents.

The government's threshold argument (Gov't Br. 27–29) rests on a fundamental misreading and misapplication of *Benjamin* and *Venske*—two cases that address a wholly different legal question. In *Benjamin*, after a list of "30 Do's and Don'ts of Jury Deliberations" surfaced in the jury deliberation room, the defendant moved for further investigation into potential juror misconduct. *United States v. Benjamin*, 958 F.3d 1124, 1135–36 (11th Cir. 2020). *Benjamin* thus addresses the threshold showing required to compel a district court to investigate alleged juror misconduct—a question governed by *Cuthel*'s "clear, strong, substantial

and incontrovertible evidence" standard, not by *Remmer*. 958 F.3d at 1136–37 (quoting *United States v. Cuthel*, 903 F.2d 1381 (11th Cir. 1990)). *Benjamin* is a case about Fed. R. Evid. 606(b) and the limited exceptions to the "no-impeachment rule"—the rule providing that after a jury has reached its verdict, the verdict will not be later called into question based on statements made or incidents that occurred during deliberations. *Id.* at 1136 (quoting *United States v. Brown*, 934 F.3d 1278, 1303 (11th Cir. 2019) (addressing Rule 606(b) and the limits of a district court's investigation into alleged juror misconduct)).

Similarly, in *Venske*—when faced with affidavits from defense investigators alleging various instances of juror misconduct—the Court denied a new trial because the affidavits included many statements excluded by Rule 606(b) and failed to show extrinsic influence on any of the jurors. *United States v. Venske*, 296 F.3d 1284, 1290 (11th Cir. 2002). That is, the defendant had not made the "colorable showing of extrinsic influence" necessary to trigger further inquiry. 296 F.3d at 1290 (quoting binding precedent from this Court recognizing that a trial court is "obligated to conduct an evidentiary hearing" when a defendant makes "a colorable showing of extrinsic influence").

Both *Benjamin* and *Venske* address questions different from those addressed in *Remmer*, and thus do not cite *Remmer*. Neither *Benjamin* nor *Venske* purports to define what categories of extrinsic information—once exposure is confirmed—trigger *Remmer*'s presumption of prejudice. Both operate at a different and earlier stage of the analysis entirely, and have no application where, as here, Mr. Sigmon made a colorable showing of jury exposure to extrinsic information by pointing to confirmation by the Clerk's Office that the jury may have received an unredacted indictment (DE 85:8–10); a docket entry uploading the indictment reviewed by the jury, entitled "Redacted Indictment," which was actually an unredacted indictment inclusive of the forfeiture allegations (DE 70); and the jurors themselves, who confirmed the exposure under oath. Neither *Benjamin* nor *Venske* involved confirmed exposure to extrinsic information; they addressed an entirely different legal question.

By relying on *Benjamin* and *Venske*, the government conflates the evidentiary standard that governs whether a colorable showing of exposure has been made with the legal consequence that flows from that showing once it has been made. Those are two distinct inquiries. Whether a colorable showing can be made—and what evidence may

properly support it, including the constraints Rule 606(b) places on post-verdict juror testimony—is one question. What happens once that showing is made is a different question entirely, and the answer to it has not changed: prejudice is presumed and the burden shifts to the government. *United States v. Dortch*, 696 F.3d 1104, 1110–11 (11th Cir. 2012), *overruled in part on other grounds by Alleyne v. United States*, 570 U.S. 99 (2013); *United States v. Whatley*, 719 F.3d 1206, 1219 (11th Cir. 2013); *United States v. Siegelman*, 640 F.3d 1159, 1182 (11th Cir. 2011). *Benjamin* and *Venske* speak to the first question. *Remmer* and its progeny govern the second. Because Mr. Sigmon made a colorable showing of exposure, *Remmer* controls.

The government compounds its error by importing *Benjamin*'s "inherently prejudicial" language into the *Remmer* presumption-of-prejudice analysis. That phrase appears in *Benjamin* as part of the investigation-triggering standard—asking whether alleged misconduct is serious enough to require the court to look further. It is not a term of art in *Remmer*'s framework. *Remmer* and its progeny require only a colorable showing of exposure to extrinsic information to trigger the presumption; not a colorable showing that the information is "inherently

prejudicial." The government attempts to import a threshold standard from an inapplicable doctrine into a framework where it does not belong, and this Court should reject that attempt.

*Dortch* alone forecloses the government's threshold argument. There, this Court applied the full *Remmer* framework—including the presumption of prejudice—when an unredacted indictment referencing the defendant's previously excluded felony convictions was sent back to the jury, without any suggestion that sending an unredacted indictment was categorically outside *Remmer*'s reach.[2] *Dortch*, 696 F.3d at 1110–11. The government's argument here, that sending back a copy of the indictment is a well-established, uniformly harmless practice (Gov't Br. 29), proves too little. It may be routine to send a copy of the indictment back with the jury during its deliberations, but *Dortch* involved precisely the same failure at issue here—a failure to redact certain information from the indictment—and applied *Remmer* without hesitation. If the government's position were correct—that indictment language sent to the jury during deliberations can never be sufficiently prejudicial to

[2] In fact, the government in *Dortch* conceded that sending back the unredacted indictment was presumptively prejudicial but contended that such error was harmless. *Dortch*, 696 F.3d at 1110.

trigger the presumption—*Dortch* would not have applied the legal framework that it did.

The government also cannot distinguish *Dortch* by characterizing forfeiture allegations as categorically less prejudicial than prior conviction allegations. (Gov't Br. 29–31.) Forfeiture allegations are criminal allegations. They are part of the indictment because federal law requires that property subject to forfeiture be alleged in the charging document. Fed. R. Crim. P. 32.2(a). Precisely because forfeiture allegations convey to the jury information about alleged criminal conduct—specifically, the existence of criminally tainted property connected to the offense—the forfeiture phase of trial is bifurcated from the guilt phase. *See* Fed. R. Crim. P. 32.2(b). That bifurcated procedure exists for the same reason prior criminal history is redacted from indictments before they go to the jury: exposing the jury to forfeiture allegations during guilt deliberations risks prejudicing the defendant's right to a verdict based solely on evidence properly admitted at trial. A forfeiture allegation commanding the defendant to surrender property "produced, transported, mailed, shipped or received in violation of" the federal child exploitation statutes tells the jury something it is not

entitled to know—that the government believes the defendant possesses items that violate the law. Such information is presumptively prejudicial.

In fact, the forfeiture allegations here actually satisfy *Benjamin*'s own criteria for triggering concern. The Court in *Benjamin* declined to require investigation into alleged juror misconduct because the extrinsic information—the list of juror do's and don'ts—made "no mention of any of the particulars of Benjamin's case" and there was "no indication that a jury reading this list would be more likely to vote to convict." 958 F.3d at 1137. Here, both conditions are satisfied in reverse: the forfeiture allegations refer specifically to Mr. Sigmon and his case—"[u]pon conviction of a violation of Title 18, United States Code, Section 2244, as alleged in this Indictment"—and there is every reason to believe a jury reading language commanding forfeiture of "visual depiction[s]"—after hearing the government's closing argument insinuating that Mr. Sigmon possessed hidden child pornography—would be more likely to convict. Even *Benjamin*'s own reasoning compels a finding of prejudice.

### B. The Government Failed to Rebut the Presumption of Prejudice to Mr. Sigmon from the Jury's Exposure to Unredacted Forfeiture Allegations in the Indictment

Because the district court correctly presumed prejudice to Mr. Sigmon after the record conclusively demonstrated the exposure of jurors to extraneous information, the only question before this Court is whether the district court abused its discretion in finding that the government had met its burden to show that the jurors' consideration of extrinsic evidence was harmless to Mr. Sigmon. The government failed to meet its burden, and the district court abused its discretion in finding otherwise.

1. <u>The nature of the extrinsic evidence.</u>

This factor weighs heavily against a finding of harmlessness. The forfeiture allegations here are more prejudicial than the prior criminal history at issue in *Dortch* and *Whatley* for three reasons the government's brief fails to adequately address. First, the forfeiture allegations directly addressed the only disputed element at trial. Intent was the sole contested issue. The government's evidence of intent consisted entirely of the videos. The forfeiture allegations, which commanded surrender of "visual depiction[s]" under Chapter 110—the federal child exploitation statutes—suggested to the jury that the government believed Mr. Sigmon

possessed child pornography. That suggestion bore directly on intent: a person who possesses child pornography has the kind of sexual interest in children that would supply the criminal intent the government could not otherwise establish. The forfeiture language plugged exactly that gap in the government's case.

Second, the forfeiture allegations did not reach the jury in isolation. The government told the jury in closing that Mr. Sigmon, as the number two official at the sheriff's office, is "not going to have child pornography on his phone" because "he's trying to make sure that he's not discovered." (DE 103:41.) A juror who then read a forfeiture allegation commanding Mr. Sigmon to surrender "[a]ny visual depiction" possessed in violation of federal child exploitation statutes would not have encountered that language in a vacuum—the government's closing had already planted the suggestion that such material existed. These two pieces of information, considered together as any deliberating juror would consider them, are mutually reinforcing in a way that neither is alone. The government's brief addresses the closing argument and the forfeiture language separately, as if disentangling them defeats the prejudice claim. But that

is not how the jury received them. The prejudice arises precisely from their interaction, and the government never engages with that.

Third, the forfeiture language was presented with institutional authority no external communication could match. Unlike a news article, a dictionary definition, or an overheard conversation, the forfeiture allegations appeared in the government's own charging document—a two-page indictment with a separately headed section titled "FORFEITURE ALLEGATIONS." A reasonable juror would understand that a separately captioned section of a government indictment is not merely restating the charged offense but is referring to something additional. In a child sex case, a separately headed forfeiture section commanding surrender of "[a]ny visual depiction" produced, transported, or received in violation of Chapter 110 carries the implicit imprimatur of the United States government that such material exists. That is a qualitatively different—and far more prejudicial—form of extrinsic information than the generic materials at issue in the cases on which the government relies.

The district court's contrary conclusion—that it was "entirely reasonable" to conclude that jurors understood the "visual depiction[s]"

reference to mean the surveillance videos of the cruise ship dining room and the photos on Mr. Sigmon's phone—is a clearly erroneous factual finding. (DE 124:22.) The cruise ship surveillance videos were never in Mr. Sigmon's possession and were not subject to forfeiture. The photos on his phone had already been seized by the government before trial. No juror applying common sense to a forfeiture provision commanding the defendant to surrender illegally possessed "visual depiction[s]" would conclude that the provision referred to cruise ship footage already in the government's hands. Nor does it make sense to presume that the jury believed the government would return to Mr. Sigmon his cellphone, only to then seek forfeiture of it upon conviction. And yet, that is the position the government advances in its response. (Gov't Br. 35 n.7.)

The district court's harmlessness determination was driven by deference to the government's characterization of what was "[m]ost likely" (Gov't Br. 35) rather than by the record actually developed. But "[m]ost likely" is not sufficient for the government to overcome the presumption of prejudice to Mr. Sigmon.

2. The manner in which the extrinsic evidence reached the jury.

The government argues inadvertence supports harmlessness (Gov't Br. 33), and the district court credited this factor in the government's favor (DE 124:22). But the inadvertence here did not occur in a vacuum. In *Whatley*, the extrinsic information that inadvertently reached the jury—a single page from Whatley's criminal history report—was unknown to both parties and not referenced by either. 719 F.3d at 1213, 1219–20. That is, there was no parallel argument by the government that primed the jury to draw the most damaging possible inference from it. Here, however, the government's rebuttal closing argument left the jury with the inescapable impression that Mr. Sigmon likely possessed child pornography he was careful to conceal. The inadvertent forfeiture language then reached the jury as apparent written confirmation of that suggestion, in the government's own charging document. The inadvertence of the document's inclusion does not neutralize its prejudicial effect when considered in this context.

3. The manner of the court's inquiry.

This factor does not support the government. When the district court ordered briefing on whether to conduct a juror inquiry, the

government argued the court was "prohibited from questioning the jurors" because the forfeiture allegations did not constitute "extraneous prejudicial information" under Rule 606(b)(2)(A). (DE 118:1.) The district court rejected that position and ordered the hearing over the government's objection. (DE 120.) When the hearing was ordered, the government submitted proposed questions limited exclusively to whether jurors recalled receiving the indictment, whether they reviewed it, whether they read the forfeiture section, and whether it was read to them. (DE 122.) The court then further compressed the government's already narrow inquiry into a single question—whether jurors recalled reading the indictment in its entirety. Seven responded in the affirmative.

That record is the entirety of the government's rebuttal evidence. The government cannot discharge a burden it spent the proceedings trying to avoid, using an inquiry it shaped to be as narrow as possible, that produced only confirmation of what was never in dispute—that the jury read the forfeiture allegations. Confirmation of exposure is the beginning of the *Remmer* analysis, not its end. The government's burden

was to demonstrate harmlessness. It developed no record on which that conclusion could rest.

It is worth noting that Mr. Sigmon also opposed the evidentiary hearing, though for fundamentally different reasons. His position was that the docket entry itself—listing the document filed at DE 70 as the "Redacted Indictment Used During Jury Deliberations" when it was in fact unredacted—already established the colorable showing of exposure to extraneous information, thereby triggering the presumption of prejudice. The government's position was that the forfeiture allegations were not prejudicial extraneous information at all and the court was prohibited from conducting any inquiry. The district court rejected the government's position and ordered the hearing, which vindicated Mr. Sigmon's position. This distinction matters because Mr. Sigmon was arguing prejudice had already been established, while the government was arguing against the applicability of the entire framework. The hearing the government resisted and then constrained is not a sufficient basis for finding its burden of rebuttal discharged.

This conclusion becomes clearer when the single-question inquiry here is compared to the inquiry this Court credited in *Siegelman*, where

the district court asked each juror twelve substantive questions specifically "designed to reveal the nature and extent of any extrinsic evidence to which the jurors were exposed." 640 F.3d at 1182 & Ex. A. The Court in *Siegelman* emphasized the district court's "careful review" as the basis for its deference. *Id.* at 1184. No such careful investigation occurred here. *Ward* similarly involved individualized inquiry into the actual effect of the extrinsic communication on the juror's deliberations. 592 F.3d at 1173–74. The one-question colloquy conducted here—designed to establish only that exposure to extrinsic information occurred—bears no resemblance to the inquiries this Court has treated as adequate to discharge the government's rebuttal burden.

The government argues that Rule 606(b) limited the court's inquiry, and that the district court appropriately tailored its questions to avoid probing jurors' deliberative mental processes. (Gov't Br. 38–39.) It is true that Rule 606(b) prohibits inquiry into the effect of extrinsic information on any juror's vote or mental processes. But the rule expressly permits inquiry into "whether extraneous prejudicial information was improperly brought to the jury's attention," Fed. R. Evid. 606(b)(2)(A), which encompasses objective facts about the nature and

extent of exposure: when jurors encountered the information, whether it was read aloud or discussed among jurors, and whether any juror brought it to another's attention. *See United States v. Perkins*, 748 F.2d 1519, 1534 n.15 (11th Cir. 1984) (permitting juror testimony about "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror"). The district court here asked only whether jurors recalled reading the indictment in its entirety. That single question established only that the forfeiture language reached the jury, which is the beginning of the *Remmer* inquiry, not its conclusion. And notably, the government's own proposed questions sought to ask whether the forfeiture section was read or read aloud to any juror—questions that go beyond mere confirmation of receipt. The government cannot now argue that a narrower inquiry than the one it proposed is sufficient to discharge its burden of rebutting the presumption of prejudice.

4. <u>The strength of the government's case.</u>

This factor strongly weighs against the government for three independent reasons, any one of which alone would support reversal.

First, the district court did not analyze it. The court's harmlessness determination identifies three bases for its conclusion: the nature of the forfeiture language, the inadvertence of the exposure, and the juror inquiry. An analysis of the strength of the government's case appears nowhere in the court's reasoning. (DE 124:18–22.) A four-factor harmlessness framework with one factor entirely omitted is a misapplication of the law, and an abuse of discretion as a matter of law.

Second, the government grossly mischaracterizes its own closing argument. The government now tells this Court that its rebuttal closing argument was merely intended to suggest "that the jury should not conclude from the mere fact that Sigmon did not possess child pornography that he could not have committed the charged offense." (Gov't Br. 36.) But that is plainly not what the prosecutor argued. What the prosecutor said bears repeating:

> The phone that he used for his personal use was a work phone. This man is No. 2 in the sheriff's office. He's not going to have child pornography on his phone. He also said he deleted items on the cruise after cruise ship security confronted him. We don't know what that is; and, unfortunately, we can't recover all deleted information. We'll never know. But if he had no child pornography on his phone ever, it wouldn't be a surprise; right? Because he's trying to make sure that he's not discovered.

(DE 103:41.) That argument does not merely decline to draw a negative inference from the absence of child pornography. It affirmatively tells the jury that Mr. Sigmon possesses child pornography; that he possessed it in this case; and that he avoided detection because his profession gave him the sophistication to conceal it. The government insinuated not just that child pornography could exist, but that it did exist, and that Mr. Sigmon had deliberately destroyed all evidence of it. Characterizing that as a neutral evidentiary argument strains credulity. A jury that heard the government suggest Mr. Sigmon deleted child pornography from his phone, and then deliberated with a government indictment commanding him to forfeit "any visual depiction," was exposed to two mutually reinforcing pieces of information pointing toward the same conclusion—one from argument and one from the charging document itself. The government's attempt to minimize one does not diminish the cumulative effect of both.

Third, and most fundamentally, the government's case on the only contested element—intent—was weak. The district court said so itself. At sentencing, it described this as "the most difficult case" it had encountered in thirty-three years, observed that "the circumstances of

this case are very, very unique," and acknowledged it was "not sure which of the modes the jury determined." (DE 180:98–101.) A district court that cannot identify which statutory mental state the jury found proven beyond a reasonable doubt is not describing an overwhelming case. It is describing exactly the kind of close case that *Perkins* holds requires a new trial when the government fails to rebut the presumption of prejudice. *Perkins*, 748 F.2d at 1534 (taking particular note of the circumstantial nature of the government's case).

The government's entire case was built on a single video of less than five minutes showing Mr. Sigmon touching his daughter's leg while she sat on his lap at a family dinner, in public, with his wife and other daughter across the table. The government acknowledged as much, telling the jury repeatedly that "[t]he video is the best evidence of what occurred: It is what it is. It speaks for itself . . . . The videos are the crux of this case." (DE 103:9, 11.) But the videos established only the act—not the intent—and the forfeiture allegations filled that evidentiary gap. A jury that was uncertain whether a father's touching of his daughter's leg reflected criminal sexual intent had its question answered, in writing,

in the government's own charging document: the defendant was someone who possessed illegal visual depictions of children.

The government argues that only a lawyer well-versed in federal sex crime prosecutions would have recognized the statutory references as relating to child pornography. (Gov't Br. 35.) That argument asks this Court to conclude that lay jurors who had just spent days hearing testimony about child sexual abuse; who had just heard the government's closing argument telling them that Mr. Sigmon was sophisticated enough to conceal child pornography; and who then read a separately headed forfeiture section of a government indictment commanding surrender of "any visual depiction" produced in violation of Chapter 110—would have failed to draw the obvious inference. That strains reason. Jurors are not lawyers, but they are not oblivious either. A juror who heard the prosecutor say that Mr. Sigmon deleted illegal content from his phone does not need to know the United States Code to understand what a forfeiture provision demanding his illegal "visual depiction[s]" means. The government's argument that the statutory references were opaque to lay jurors is belied by the very closing argument the government now mischaracterizes—an argument that made the connection between Mr.

Sigmon and child pornography explicit, in plain English, for any juror to understand.

Under *Martinez* and *Perkins*, where the government's evidence is not overwhelming, the presumption of prejudice stands unrebutted and a new trial is required. *United States v. Martinez*, 14 F.3d 543, 552 (11th Cir. 1994); *Perkins*, 748 F.2d at 1534. Here, the video evidence established the act, not the intent; and the forfeiture allegations, combined with the government's closing argument, supplied what the evidence could not—a basis for the jury to conclude that Mr. Sigmon was the kind of person who commits the crime charged. That is precisely the kind of extrinsic influence *Remmer* was designed to prevent.

5. The district court's instructions did not cure the prejudice.

The government's remaining argument is that the district court's repeated instructions that the indictment was "not evidence" cured any alleged prejudice stemming from the jury's exposure to the forfeiture allegations. But this Court has never held that the court's instructions to the jury alone rebut the *Remmer* presumption of prejudice—a rule that would effectively eliminate the presumption in every case. This Court, in *Martinez* and *Perkins*, reversed new trial denials despite similar

instructions because the government's evidence was not overwhelming and the risk of prejudice was substantial. *See*, *e.g.*, *Martinez*, 14 F.3d at 551 (expressing skepticism of the jurors' ability to follow the court's instructions).

The instruction is least effective precisely in circumstances like these. A juror who heard the prosecutor suggest in closing that Mr. Sigmon possessed hidden child pornography, and who then read a government indictment commanding Mr. Sigmon to forfeit illegal "visual depiction[s]," does not compartmentalize those two pieces of information simply because the court said the indictment was "not evidence." The instruction tells the jury not to treat the indictment as proof of guilt. It cannot instruct the jury to disregard the inference the government itself invited—that Mr. Sigmon possessed child pornography, an inference the forfeiture allegations then appeared to confirm in writing.

* * *

The government failed to rebut the presumption of prejudice that attached from the jury's confirmed exposure to the extraneous forfeiture allegations in the indictment; and the district court abused its discretion in finding otherwise. The district court's harmlessness finding is

unsupported by adequate inquiry, omits a required factor, rests on a factual conclusion this Court should not credit, and cannot be reconciled with *Martinez* and *Perkins* on the relationship between case strength and the government's rebuttal burden. This Court should reverse the denial of Mr. Sigmon's motion for a new trial and remand.

## CONCLUSION

For the foregoing reasons, the Court should vacate Mr. Sigmon's conviction and remand for entry of a judgment of acquittal. Alternatively, the Court should reverse the district court's denial of Mr. Sigmon's motion for a new trial and remand for a new trial.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*/s/ Anshu Budhrani*
ANSHU BUDHRANI
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 530-7000

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 6,183 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

*/s/ Anshu Budhrani*
ANSHU BUDHRANI

## CERTIFICATE OF SERVICE

I certify that on this 6th day of April, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via CM/ECF on Alan Chen, Attorney at the United States Department of Justice; and George E. Doty III, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Anshu Budhrani*
ANSHU BUDHRANI